UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN NAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-00545-JRO-TAB |
| | ) | |
| CENTURION HEALTH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
RESOLVING PENDING MOTIONS,
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff John Naylor is an Indiana Department of Correction ("IDOC") inmate housed at Pendleton Correctional Facility ("Pendleton"). In this action, Naylor alleges that Defendants violated his Eighth Amendment rights by taking away medication for his gastrointestinal reflux disease ("GERD") and irritable bowel syndrome ("IBS"). *See* dkts. 29, 30. Naylor proceeds on Eighth Amendment deliberate indifference claims against Dr. John Mershon and a *Monell* claim against Centurion Health of Indiana. Dkt. 29. Naylor also brought allegations for failure to treat a head injury, but partial summary judgment was issued on those claims, and they were dismissed without prejudice for failure to exhaust administrative remedies. Dkt. 60.

Defendants have moved for summary judgment. For the reasons explained below, Defendants' motion for summary judgment, dkt. [69], is **granted,** and Naylor's motion for summary judgment, dkt. [77], is **denied.** Naylor's motion for preliminary injunction, dkt. [76], is **denied.**

1

## I. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In response to Defendants' summary judgment motion, Naylor filed his own motion for summary judgment on December 9, 2025. Dkt. 77. The deadline to file dispositive motions was November 28, 2025. Dkt. 61. Naylor did not seek an extension of this deadline or leave to file an untimely motion for summary judgment. Any request to treat his response as a cross-motion for summary judgment, dkt. [77], is **denied.** The Court has considered Naylor's filings at docket 77 and 78 as his response in opposition to Defendants' summary judgment motion.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

2

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

### III.  FACTUAL BACKGROUND

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Naylor and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A.    The Parties and Background

Plaintiff John Naylor is an IDOC inmate incarcerated at Pendleton, where the events that gave rise to this action took place. Dkt. 30. Naylor is proceeding in this action on his allegations that Dr. Mershon and Centurion "took away" his Pepcid and Imodium prescriptions that he needs for his GERD and IBS. Dkt. 30 at 3.

Defendant Dr. John Mershon is a licensed physician who worked for Centurion at Pendleton between September 2021 and February 2024. Dkt. 70-2 at 1.

Defendant Centurion Health of Indiana ("Centurion") was contracted to begin providing medical services at all IDOC facilities beginning July 1, 2021. *Id.*

**B.    Naylor's Diagnoses and Medication History**

Naylor has carried a diagnosis of IBS since 2015, and a diagnosis of GERD since 2012. Dkt. 70-1 at 87.

Inmates at Pendleton are responsible for taking their medication as prescribed and requesting refills as needed. Dkt. 70-2 at 3.

**1.    IBS and Imodium**

IBS is a gastrointestinal disorder that can cause various abdominal symptoms, including cramps, bloating, and gas, as well as changes in bowel movements such as diarrhea and/or constipation. Dkt. 70-2 at 1–2. Diarrhea can be controlled with loperamide (Imodium), which slows the movement of the gut muscles, resulting in firmer and less frequent bowel movements. *Id.* at 2. Long-term daily use of Imodium does carry risks, including dependence on the drug and withdrawal symptoms after stopping, as well as potential cardiac and respiratory issues. *Id.* at 4.

Beginning in 2023, providers at Pendleton were required to submit a formulary exception request ("FER") to prescribe Imodium on a long-term basis. *Id.* The FERs were reviewed by a physician at the state or corporate level, who would approve the requested medication, deny the medication, or offer an alternate treatment plan ("ATP"). *Id.* This requirement was not in place before 2023. *Id.* After this change, providers could prescribe a formulary dose of

4

Imodium (twelve tablets in one month) without submitting an FER. *Id.*; dkt. 70-1 at 184. Inmates taking prescribed Imodium would have to obtain each dose of the medication from the infirmary and request refills as needed, and the infirmary also kept tablets in stock for inmates needing it in response to an acute episode. Dkt. 70-2 at 2. As an alternative to Imodium, physicians could prescribe Banatrol to control diarrhea. *Id.* at 2. Banatrol is a medical food supplement that absorbs fluids to normalize stool consistency. *Id.* Banatrol is also subject to an FER. *Id.*

### 2. GERD and Pepcid

GERD is a digestive disorder where acid in the stomach flows back up into the esophagus, causing symptoms such as heartburn, acid reflux, and chest pain. Dkt. 70-2 at 2. GERD is treatable with medication including famotidine (Pepcid), which decreases the amount of acid in the stomach. *Id.* Pepcid is available at Pendleton for purchase from the commissary and may be prescribed by a provider. *Id.* Pepcid prescriptions do not require the submission of an FER. *Id.* Pepcid is also a keep on person ("KOP") medication, meaning inmates can carry a certain quantity on them and self-administer according to the directions provided rather than obtain each dose from the infirmary. *Id.*

## C. Naylor's Relevant Medical History

### 1. 2021–2022

Facility medical records indicate that Naylor received two capsules of Imodium in the mornings and evenings nearly every day from June 1, 2021, to

February 18, 2022.  Dkt. 70-1 at 216–225.  He had been on the medication since at least August 2020.  *Id.* at 234.

On February 25, 2022, Naylor met with non-party NP Vernon Osburn for a chronic care visit.  *Id.* at 108–110.  Naylor reported having 6 to 9 loose and liquid stools per day and that he had previously only had one bowel movement per day on Imodium.  *Id.*  NP Osburn prescribed Imodium, 2 mg, and instructed Naylor to take two tablets, twice per day.  *Id.*  The prescription lasted through August 26, 2022.  *Id.*  Naylor continued to receive two capsules of Imodium in the mornings and evenings nearly every day from March 1, 2022, through the end of the year.  *Id.* at 204–213.  The prescription was renewed on August 19, 2022, and was active through February 14, 2023.  *Id.* at 118.

On November 18, 2022, Naylor submitted a health care request form ("HCRF") requesting to be seen for GERD.  *Id.* at 61.  On November 28, he met with Dr. Mershon.  *Id.* at 130–32.  Naylor reported that he was experiencing heartburn and that it had responded well to Pepcid in the past.  *Id.* at 130.  Dr. Mershon ordered Pepcid, 10mg, and the prescription lasted through February 25, 2023.  *Id.* at 132.  Because this medication is a KOP medication, there are no records indicating how frequently Naylor self-administered it.  *Id.* at 202; dkt. 70-2 at 3.  However, the Pepcid prescription was refilled in December 2022 and February, March, April, May, and September 2023.  Dkt. 70-1 at 315–16; dkt. 70-2 at 3.

6

### 2.    2023

On January 3, 2023, Naylor submitted a HCRF requesting to be seen for cramps and diarrhea.  Dkt. 70-1 at 57.  NP Osburn saw Naylor on January 6.  *Id.* at 139–41.  Naylor complained of IBS and reported he needed his Imodium "as contracted from legal case" and Pepcid.  *Id.* at 139.  NP Osburn noted that Naylor had not tried fiber.  *Id.*  NP Osburn refilled the Pepcid prescription through July 4, 2023, and placed an FER for Imodium.  *Id.* at 141.  NP Osburn also started Naylor on Fibercon for his IBS.  *Id.*

On January 8, the Associate Statewide Medical Director of Centurion reviewed the FER for Naylor's Imodium and rejected it, suggesting an alternate treatment plan ("ATP") of fiber and Banatrol, which had a good result at other facilities.  *Id.* at 184.  While Dr. Mershon was not involved in this decision, he has attested that it was reasonable to trial Naylor on fiber and Banatrol as a replacement for Imodium, to continue controlling his diarrhea while reducing his risk of complications from daily Imodium use.  Dkt. 70-2 at 4.

On January 11, Naylor saw Dr. Mershon for a medical visit.  Dkt. 70-1 at 142–44.  Naylor reported that he had diarrhea that was bloody at times.  *Id.* at 142.  Dr. Mershon noted that the Imodium FER had been rejected and that an alternate treatment plan of fiber and Banatrol had been recommended.  *Id.* at 143.  Dr. Mershon submitted an FER for Banatrol, noting the severity of the diarrhea symptoms.  *Id.*  Dr. Mershon instructed Naylor to follow up with chronic care as scheduled, or earlier if his symptoms had not improved.  *Id.*

On January 15, a ninety-day prescription of Banatrol was approved. *Id.* at 185.

Naylor saw Dr. Mershon again on January 27. *Id.* at 145–147. He reported that his symptoms had not improved on Banatrol. *Id.* at 145. Dr. Mershon elected to continue the Banatrol for a few more weeks before trying an alternative in order to give the medication time to take effect. *Id.* at 146.

Four days later, Dr. Mershon saw Naylor. *Id.* at 149–51. Naylor again reported the Banatrol was not controlling his diarrhea, and that he had anal irritation with bleeding. *Id.* at 149. Dr. Mershon ordered an ointment for the irritation. *Id.* at 150.

On March 17, NP Osburn saw Naylor. *Id.* at 154–156. Naylor told NP Osburn he was on Banatrol until the Imodium "comes in" and said he had a lawsuit about his medication. *Id.* at 154. NP Osburn offered the formulary amount of Imodium, but Naylor refused and stated he wants "what his lawsuit calls for." *Id.* at 155. Naylor disputes that he denied the Imodium offered by NP Osburn. Dkt. 78 at 3. NP Osburn continued the Banatrol. Dkt. 70-1 at 155.

On April 24, Dr. Mershon saw Naylor for a medical visit. *Id.* at 159–61. Naylor reported he was taking the Banatrol but said it was not helping as he was having diarrhea four times a day. *Id.* at 159. Dr. Mershon responded with a treatment plan that included placing an FER seeking approval to start Naylor back on Imodium for a six-month supply. *Id.* at 161. To reduce Naylor's risk of complications from long-term Imodium use, Dr. Mershon planned to request a lower dose of one (rather than two) tablets twice per day. *Id.*

8

The FER was approved on April 26. *Id.* at 190.

On June 7, NP Osburn saw Naylor for a chronic care visit, who reported that his Imodium dosage was helpful, with decreased bleeding, solid stools, and fewer bowel movements per day. *Id.* at 166. Naylor reported the Pepcid was helpful with his GERD. *Id.* NP Osburn continued both medications. *Id.* at 168.

### 3.   2024 to present

Dr. Mershon was not involved in Naylor's medical care after April 24, 2023, other than submitting an FER for custom shoes for Naylor. Dkt. 70-2 at 5; *see generally* dkt. 70-1. On February 14, 2024, Dr. Mershon stopped working at Pendleton and transferred to the Indiana Women's Prison. Dkt. 70-2 at 6.

Naylor initiated this lawsuit on March 29, 2023. Dkt. 1. He filed the operative, amended complaint on November 7, 2023. Dkt. 28.

Naylor continued to be prescribed Imodium and Pepcid after filing his Complaint, with an Imodium refill on October 27, 2023, and a Pepcid refill on December 7, 2023. Dkt. 70-2 at 5. The prescriptions were refilled on April 16, 2024, December 13, 2024, January 17, 2025, and February 19, 2025. *Id.* at 265, 278, 283. Pepcid was refilled on August 28, 2025. *Id.* at 424. On September 25, 2025, Naylor received Imodium for an IBS flare-up. *Id.* at 418.

On October 13, 2025, Dr. Kristin Partain saw Naylor for chronic diarrhea and ordered labs, including stool samples. *Id.* at 423–26. Naylor was instructed not to take Imodium while obtaining stool samples. *Id.* at 425.

Naylor saw Dr. Partain again on November 13 for his IBS. *Id.* at 432. Naylor mentioned his ongoing lawsuit and expressed frustration that Dr. Partain

did not think Imodium was indicated. *Id.* She noted that the discussion was abbreviated because Naylor "was not interested in discussing his symptoms but in demanding and threatening." *Id.* at 433. She placed Naylor on a medical hold in the infirmary for twenty-four hours to obtain stool samples and noted that his Pepcid prescription should not be refilled and that he could purchase the medication from the commissary instead. *Id.* at 434–35.

## IV. DISCUSSION

Naylor proceeds on Eighth Amendment deliberate indifference claims against Dr. Mershon and a *Monell* claim against Centurion. Dkt. 29.[1]

### A.      Deliberate Indifference to Medical Need

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is

---

[1] The Court will not address Naylor's arguments in opposition to summary judgment regarding his previous lawsuit with unrelated defendants and alleged breach of contract claims that are not proceeding in this suit. Naylor previously reached a settlement agreement in the case of *Naylor v. Wexford Health Care Services, Inc.*, 1:18-cv-01218-JMS-DML. Neither Centurion nor Dr. Mershon were defendants in that action. Any settlement reached between the parties in that action is not binding on the Defendants, and Naylor is not proceeding on any breach of contract claims here. Dkt. 29.

subjectively, indifferent.'"  *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).  The Court assumes for purposes of the summary judgment motion that Naylor's GERD and IBS were objectively serious.  To avoid summary judgment, then, the record must allow a reasonable jury to conclude that Dr. Mershon acted with deliberate indifference—that is, he "consciously disregarded a serious risk to [Naylor's] health."  *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up).  Deliberate indifference requires more than negligence or even objective recklessness.  *Id.*  Rather, Naylor "must provide evidence that an official actually knew of and disregarded a substantial risk of harm."  *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).  "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment.  So in many cases, deliberate indifference must be inferred from the propriety of their actions."  *Dean*, 18 F.4th at 241 (internal citations omitted).

Dr. Mershon is entitled to summary judgment because he adequately treated Naylor's GERD and IBS based on his professional judgment.  Naylor has not designated any evidence from which a reasonable jury could infer that his course of treatment was "so far afield of accepted professional standards that a jury could find it was not the product of medical judgment."  *Cesal v. Moats*, 851 F.3d 714, 724 (7th Cir. 2017).

Naylor alleges in the operative complaint that Dr. Mershon "took away" his Pepcid and Imodium prescriptions.  Dkt. 30 at 1.  This allegation is not supported

11

by Naylor's medical records.  Dr. Mershon first prescribed Pepcid on November 28, 2022, after Naylor submitted a HCRF regarding his GERD.  Thereafter, Naylor's Pepcid prescription was routinely and timely renewed, and he had access to purchase it from commissary.  Dr. Mershon specifically approved refills of Pepcid six times between December 2022 and September 2023.  Dkt. 70-1 at 315–16.  There is no evidence that Dr. Mershon impeded Naylor's access to Pepcid or was otherwise deliberately indifferent to his GERD.

Regarding the Imodium and IBS, Naylor's medical records establish that he had continuous access to Imodium after it was first prescribed in February 2022 until January 2023, and again after the prescription was restarted in April 2023.  Naylor also had access to Imodium at the infirmary in the event of an acute episode of diarrhea.  The FER that Dr. Mershon submitted in January 2023 for Imodium was denied in favor of an alternative treatment plan by Centurion's Associate Statewide Medical Director, not Dr. Mershon.  There is no evidence that Dr. Mershon "took away" Naylor's Imodium prescription.

For the brief time that Naylor was not prescribed Imodium, the record reflects only that Dr. Mershon followed the prescribed alternative treatment plan of fiber and Banatrol for a trial period.  Dr. Mershon saw Naylor three times shortly after he began taking the new medication in January 2023 and elected to give it time to take effect and ordered an ointment for a newly reported anal irritation.  When Dr. Mershon saw Naylor next in April 2023 and learned the alternative plan was still not helping the symptoms, Dr. Mershon submitted an FER for Imodium again, but at a lower dose—which was approved.  Naylor has

12

not submitted any evidence to support his claim that Dr. Mershon took away his Imodium prescription or was otherwise deliberately indifferent to his IBS.

While Naylor shares his dissatisfaction with Dr. Mershon's treatment decision to briefly follow the trial alternative treatment plan, disagreement with a physician's chosen course of medical treatment alone is insufficient to establish a claim of deliberate indifference. *Thomas v. Martija*, 991 F.3d 763, 772 (7th Cir. 2021). Naylor's claim is essentially that he should not have been required to participate in the alternative treatment plan for fiber and Banatrol from January to April 2023, and that he should have received Imodium instead. Stated differently, Naylor wanted specific medication to treat his IBS. However, it is fundamental that prisoners are not entitled to demand specific care from their medical providers. *Walker v. Wexford Health Sources*, 940 F.3d 954, 965 (7th Cir. 2019).

No reasonable jury could conclude that Dr. Mershon acted with deliberate indifference when treating Naylor's GERD and IBS. Accordingly, Dr. Mershon is entitled to summary judgment in his favor on Naylor's Eighth Amendment claim.

**B.   Policy, Practice or Custom claim against Centurion**

Unlike Dr. Mershon, Centurion is a private corporation acting, pursuant to its contract with the IDOC, under color of state law to provide medical services to prisoners. "A municipality 'acts' through its written policies, widespread practices or customs, and the acts of a final decisionmaker." *Levy v. Marion Co. Sheriff*, 940 F.3d 1002, 1010 (7th Cir. 2019). So liability under a Section 1983 claim requires evidence that Naylor's constitutional rights were violated by a

policy or custom of Centurion. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694–95 (1978); *accord Gonzalez v. McHenry Cnty.*, 40 F.4th 824, 829 (7th Cir. 2022); *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021).

As explained above, the designated evidence shows that Naylor did not suffer a constitutional violation when he was denied the specific healthcare treatment he demanded for his GERD and IBS. So, the Court need not consider whether a Centurion policy was involved. Naylor's *Monell* claim fails regardless. Summary judgment must be granted for Centurion.

## V. MOTION FOR PRELIMINARY INJUNCTION

Naylor has filed a motion for preliminary injunction regarding his medication and unrelated matters. To obtain preliminary injunctive relief, Naylor must establish that (1) he will suffer irreparable harm; (2) his traditional legal remedies are inadequate; and (3) he has some likelihood of success on the merits. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).

However, because the Court finds that Defendants are entitled to summary judgment on the merits of Naylor's claims, he necessarily has failed to show a likelihood of success on the merits. Thus, Naylor's request for a preliminary injunction, dkt. [76], is **denied.**

## VII. CONCLUSION

Defendants' motion for summary judgment, dkt. [69], is **granted.** Naylor's motion for preliminary injunction, dkt. [76], and untimely motion for summary judgment, dkt. [77], are **denied.**

14

Final judgment consistent with this Order and the Court's March 7, 2025, Order on Defendants' motion for partial summary judgment, dkt. [60], will issue in a separate entry.

**SO ORDERED.**

Date:  7/16/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

JOHN NAYLOR
128761
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel